```
                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF SOUTH CAROLINA
                         CHARLESTON DIVISION


UNITED STATES OF AMERICA      :
                              :
           vs.                :
                              :
ANTOINE JONES                 :      9:09 – CR – 145
```

Plea in the above-captioned matter held on

Monday, June 22, 2009, commencing at 11:22 a.m.,

before the Hon. Sol Blatt, Jr., in the United States

Courthouse, Courtroom III, 81 Meeting St., Charleston,

South Carolina, 29401.


APPEARANCES:

           MICHAEL RHETT DeHART, ESQUIRE, Office of the
           U.S. Attorney, P.O. Box 978, Charleston, SC,
           appeared for the Government.

           ANN BRIKS WALSH, ESQUIRE, Office of the
           Federal Public Defender, P.O. Box 876,
           Charleston, SC, appeared for the Defense.


      REPORTED BY DEBRA L. POTOCKI, RMR, RDR, CRR
    Official Court Reporter for the U.S. District Court
                  P.O. Box 835
               Charleston, SC  29402
                  843/723-2208

1            MR. DeHART:  May it please the Court, Your Honor, the
2    Government would call the case of United States of America
3    versus Antoine Jones, Criminal No. 9:09-145.
4       Your Honor, we call this case for purposes of a guilty
5    plea hearing.  The defendant's present and is represented by
6    Ann Walsh.
7            THE CLERK:  State your full name.
8            THE DEFENDANT:  Antoine Jones.
9       (Defendant was duly sworn by the clerk.)
10           THE COURT:  He's pleading to count three?
11           MS. WALSH:  Yes, sir.
12           THE COURT:  Your name is Antoine Jones.
13           THE DEFENDANT:  Yes, Your Honor.
14           THE COURT:  How old are you?
15           THE DEFENDANT:  Twenty-five.
16           THE COURT:  What kind of educational background do
17   you have?
18           THE DEFENDANT:  Twelfth.
19           THE COURT:  Are you under the care of any doctor at
20   this time for any mental or emotional problems?
21           THE DEFENDANT:  No, Your Honor.
22           THE COURT:  Are you taking anything that might
23   interfere with your thinking processes?
24           THE DEFENDANT:  No, Your Honor.
25           THE COURT:  You fully understand what's going on here

1  today?
2           THE DEFENDANT:  Yes, Your Honor.
3           THE COURT:  Now, Miss Walsh has been appointed by the
4  Court to represent you.  Are you fully satisfied with her
5  services to date?
6           THE DEFENDANT:  Yes, Your Honor.
7           THE COURT:  You've been charged in a -- let's see --
8  He charged in each count?
9           MR. DeHART:  Yes, sir.
10          THE COURT:  You've been charged in a four count
11 indictment with theft of mail in the first count, identity
12 theft in the second count, conspiracy to commit bank fraud in
13 the third count, and aggravated identity theft in the fourth
14 count.
15    Now, I assume Ms. Walsh has been over all these charges
16 with you, is that correct?
17          THE DEFENDANT:  Yes, Your Honor.
18          THE COURT:  Do you want me to go over them any
19 further with you, or you fully understand these charges that
20 are made against you?
21          THE DEFENDANT:  Yes, Your Honor, I fully understand
22 it.
23          THE COURT:  Now, you're here today, you previously
24 pled not guilty to these charges, you're here today to, as I
25 understand it, plead guilty to count three, which charges that

1  you and Deja Chapel, Jerome Coakley and Easin Rivers
2  conspired -- that's planned -- and schemed to defraud the Bank
3  of America and Wachovia Bank and SunTrust Bank of money that
4  was owned by those banks.  And that you were -- what you're
5  charged with doing was taking personal -- stealing personal
6  checks from mailboxes in Beaufort and Jasper County, and
7  getting these -- instructing these other three people to take
8  them and open them up -- open up a bank account with them,
9  these stolen checks, endorse them, open up a bank account and
10 draw out money with counter checks, and y'all divided the
11 money.
12    Now, has Ms. Walsh particularly been over this count three
13 with you in detail?  You understand --
14           THE DEFENDANT:  Yes.
15           MS. WALSH:  Judge, Mr. Jones wanted me to clarify
16 that first of all, he does understand count three, and he does
17 intend to plead guilty to count three.  But he does not agree
18 that he is guilty of paragraph 3(a) of count three.  And
19 paragraph 3(a) says that he, Antoine Jones, stole personal
20 checks and business checks from mailboxes in Jasper County and
21 Beaufort County.  And Mr. Jones is not agreeing that he did
22 that.  But he -- that section is not necessary for the
23 commission of count three.
24           THE COURT:  He admits to the other charges in the
25 other paragraphs?

1           MS. WALSH:  Yes, sir.

2           THE COURT:  You agree that's not necessary to

3   complete the charge against him, Mr. United States Attorney?

4           MR. DeHART:  Yes, Your Honor, I do agree.  I believe

5   Mr. Jones' explanation is he directed someone else, or one of

6   his co-conspirators stole the checks.  And he agreed with the

7   rest of the indictment, but Ms. Walsh is correct, it's not

8   necessary.

9           THE COURT:  I see.  Well, now, before I can accept

10  your plea there are a number of questions I'm going to have to

11  ask you to be sure that you are guilty, and that your plea is

12  knowingly and voluntarily made.

13      Do you understand that if you didn't plead guilty, you'd

14  be entitled to a trial by jury in this courtroom on all these

15  charges in the very near future?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  And at such a trial you'd come into court

18  presumed to be innocent, and the Government would have to

19  prove you guilty beyond a reasonable doubt.  And at that trial

20  they would have -- the Government would have to put up

21  witnesses to testify against you.  And you, through Ms. Walsh,

22  could ask these witnesses any questions that were relevant and

23  appropriate.

24      Now, at such a trial you could put up witnesses to testify

25  for you in your behalf, and you could testify in your behalf,

1    if you wanted to do so.  However, if you felt that it wasn't
2    in your best interests to put up witnesses or either testify
3    yourself, you wouldn't have to.  And I'd tell the jury your
4    failure to testify and/or put up witnesses, that they couldn't
5    get any inference whatsoever of your guilt from that fact,
6    because you don't have anything to prove.  It's the
7    Government's got to prove you guilty beyond a reasonable
8    doubt.
9         Do you understand that?
10             THE DEFENDANT:  Yes, Your Honor.
11             THE COURT:  Now, had you gone to trial and been found
12   guilty of all of these charges, you'd have been subject to a
13   maximum term of imprisonment of 52 years, if you'd been found
14   guilty of all of them.  And fines totaling $1,500,000,
15   supervised release for at least five years, and a special
16   assessment of $300.  Now, that's according to the statutory
17   law.
18       Now, the count to which you're pleading will allow this
19   Court, at its discretion, to sentence you to a maximum term of
20   imprisonment of 30 years, a maximum fine of $1,000,000, a
21   maximum term of supervised release of five years, and a
22   special assessment of $100.  That's the statutory penalty.
23   That's not necessarily the guidelines or what they call for,
24   but Ms. Walsh has been over our guidelines sentencing ranges
25   with you, hasn't she?

1           THE DEFENDANT:  Yes, Your Honor.
2           THE COURT:  Anyway, in regard to the supervised
3    release that I spoke about, the five years, that means when
4    you're released from whatever custody sentence you get, that
5    you'll be under the jurisdiction of the probation officer for
6    five years.  And so long as you carry out the terms and
7    conditions of your supervised release, everything will be
8    fine.  However, if you violate those terms, the probation
9    officer can bring you back before this Court and seek to have
10   your supervised release revoked.  And if your supervised
11   release is revoked, you could receive an additional three to
12   five years of imprisonment, you wouldn't get any credit for
13   the time you've been on supervised release.  And if what you
14   did to violate your supervised release was commit another
15   crime, you'd have that on top of it all.
16      So supervised release is an important factor when you get
17   released from incarceration you need to keep in mind; you
18   understand that?
19           THE DEFENDANT:  Yes, Your Honor.
20           THE COURT:  Now, I don't know -- one thing I want to
21   tell you before I -- I don't know anybody that understands or
22   knows more about the guidelines and the sentencing procedures
23   than Ms. Walsh.  But I'm going to go over it all with you just
24   to be sure we understand it.  But I want you to understand
25   that if I accept your plea here today, that you can't next

1  week or week after or next month decide, well, I wish I hadn't
2  pled guilty, I want to go down -- back down there and withdraw
3  my guilty plea. You can't withdraw your guilty plea once I
4  accept it. There's nothing left to do but get your
5  presentence report prepared and then bring you back for
6  sentencing. Do you understand that?
7          THE DEFENDANT: Yes, Your Honor.
8          THE COURT: Now, what's going to happen, if I accept
9  your plea here today, is the probation officer is going to
10 commence an investigation into your entire life history. And
11 to -- and prepare what we call the presentence report. And
12 that's -- that presentence report will have a minimum and
13 maximum imprisonment term recommended for you. Well, I don't
14 know, I don't have any idea what your guideline range is, the
15 minimum or maximum. But I'm just going to pick something out
16 of the air so we'll have something to talk about. If the
17 presentence report came back with a minimum of 40 and a
18 maximum of 60 months, I don't -- keep in mind, I don't have
19 any idea what it is, I'm just using that -- that would
20 normally mean that you would have -- I'd sentence you under
21 the guidelines, but your guideline range would be a minimum of
22 40, a maximum of 60.
23     Now, if I felt that the guidelines overstated the
24 seriousness of the offense, I could go below the 40. Or if I
25 thought the guidelines understated the seriousness of the

1  offense, I could go above 60.  But I'd have to state into the
2  record my legal and factual reasons for doing that.  And that
3  would be a somewhat rare occasion.
4      So the presentence report would be prepared, and based
5  upon that, or to a large extent, on the crime that you
6  committed, you're confessing to pleading guilty to, and
7  whatever criminal history you may have, if you have any.  And
8  when you get the presentence report, you and Ms. Walsh go over
9  it.  If y'all find something in it you think is incorrect, she
10 can take it up with the probation officer and try to
11 straighten it out.  If she can't straighten it out, they bring
12 it to me and I settle it.  If you're not satisfied with
13 whatever I decide, you've got a right to appeal what I decide
14 to the Fourth Circuit Court of Appeals.
15     Now, the Government's got the same right.  If they see
16 something in it they disagree with, the presentence report,
17 they try to work it out with the probation officer.  If they
18 can, fine.  If they don't, I settle it.  And they've got the
19 same right to appeal as you have.
20     Now, there's a couple things I want you to keep in mind.
21 First of all, as I said, I don't doubt, I have no reason to
22 doubt that Ms. Walsh has told you your guideline range
23 correctly.  But if the probation officer comes into court and
24 convinces me by the greater weight of the evidence that your
25 guideline range is higher than what Ms. Walsh told you,

1  convinces me it's 80 to 100 -- I'm not saying that's going to
2  happen, but I'm just using those figures rather than 40 to
3  60 -- and I was convinced of that by the greater weight of the
4  evidence, then I could adopt that as your guideline range.
5  Because I'm not bound by what Ms. Walsh might have told you or
6  what the United States Attorney has indicated to you, because
7  I wasn't a party to any of that conversation, and neither was
8  the probation officer.
9       So you couldn't say to me, well, my attorney told me my
10 guideline range was 40 to 60 months, and you can't go above
11 that.  I can tell you what I think it ought to be, if I
12 disagree with what Ms. Walsh told you, and I'm not bound by
13 what she -- any conversation you have had with her or the
14 United States Attorney, because I wasn't a party to it.  You
15 understand that?
16           THE DEFENDANT:  Yes, Your Honor.
17           THE COURT:  Now, neither has the probation officer.
18      Another thing you want to keep in mind, if you want to
19 rely on Ms. Walsh, you've got to tell her the truth.  Because
20 if you don't tell her your entire history correctly, the
21 probation officer will pick it up, and you might have done
22 something that you didn't tell her about that will double your
23 guideline range.  And you couldn't come back in here and say
24 to her and to me, well, my attorney told me my guideline range
25 was one thing; here it is double.  Well, she'd have told you

1  correctly if you'd have told her the truth.  So you can't
2  benefit, if you don't tell her the truth, then your guideline
3  range is higher than you thought it was going to be, that's
4  just too bad.  So it's important that you be truthful with
5  her.  You understand that?
6          THE DEFENDANT:  Yes, Your Honor.
7          THE COURT:  Now, you've entered into a plea
8  agreement, I believe, with the Government.  And did anybody
9  threaten you or force you or do anything to make you enter
10 into this plea and plea agreement?
11         THE DEFENDANT:  No, Your Honor.
12         THE COURT:  In this plea agreement you agree to plead
13 guilty to this count three that we've talked about, that you
14 and these other people entered into this agreement, planned to
15 commit bank fraud, that is, take money from the banks that
16 belonged to them.  And you willingly participated in this
17 agreement, and that you at least did one of the acts, an act
18 was committed by one of the co-conspirators, one of the other
19 defendants in furtherance of the conspiracy.
20     Now, you agree also to give the Government any financial
21 information about you that they want.  And that you will pay a
22 fine, the special assessment and any restitution that's
23 ordered against you, whatever part of it, to the best of your
24 ability, now, while you're incarcerated or on some reasonable
25 monthly basis after your incarceration is completed.  Of

1  course, that only applies to the special assessment as well as
2  the restitution.
3      Now, the United States agrees that if you carry out the
4  terms of this plea agreement, that they'll dismiss, upon
5  sentencing, the other three counts of the indictment against
6  you.  They may dismiss it.  If I want to consider them when I
7  sentence you, these other counts, I have a right to do so.
8  That's in my discretion.
9      Now, you recognize that the presentence report's going to
10 have to be prepared and I'm going to have to see it and see
11 what they say about you.  And that another thing that I want
12 to explain to you, is once we establish your guideline range,
13 once the presentence report comes back and we establish your
14 guideline range, then we arrive at a sentence for you, there's
15 a section of the United States Code of laws, Title 18 Section
16 3553.  And that tells the Court to establish the guidelines
17 range, which we will have done, and then to look at some other
18 factors before I sentence you.  I should look at your
19 individual situation, not you as a member of a class of people
20 who committed similar acts or that kind of thing.  But I look
21 at you as an individual and determine what you did, and
22 determine what kind of life you've led, so to speak.  The good
23 things you've done come into court with you, the bad things
24 you've done come into court with you.  I take your individual
25 case into consideration.

1     And then I'm instructed, too, to give you a punishment
2  that is in keeping with the crime you committed, and one that
3  will maintain the confidence that the people of this country
4  have in the judicial system, and one that hopefully will deter
5  others who might be inclined to commit a similar crime from
6  doing it.
7     So I take those factors into consideration and meld your
8  guideline range in, take your guideline range, put them all
9  together, and that's the way I arrive at a sentence for you.
10 I put all those factors together.
11    Now, the United States is going to tell me what you did.
12 And if I accept your plea, you've waived all your
13 constitutional rights, there will be nothing left to do but
14 get the presentence report and sentence you.  But I want you
15 to listen carefully to what the United States Attorney tells
16 me, because when he gets through, I'm going to ask you,
17 Mr. Jones, is what he's told me true and correct.
18 Substantially true and correct.  If it is, you tell me it is;
19 if it's not, you tell me it's not.
20    Now, you step to one side with Ms. Walsh.
21    All right, Mr. United States Attorney.
22         MR. DeHART:  May it please the Court, Your Honor,
23 Antoine Jones committed bank fraud and mail theft in Beaufort
24 and Jasper Counties.  In January of 2005, local authorities
25 executed a search warrant at his residence, after Jones used a

1    stolen credit card to purchase and have delivered, computer
2    equipment to his address.
3        During the search, authorities found stolen mail, stolen
4    business and personal checks, and a spiral notebook containing
5    45 social security numbers of other persons, in Jones'
6    bedroom.
7        Jones used the stolen identifying information from the
8    mail to buy Alltel phones and phone service.  The Postal
9    Inspector contacted fraud investigators of Alltel and found
10   that more than 40 fraudulent accounts were associated with
11   Jones' address.  Alltel forwarded Inspector Key the account
12   information for these fraudulent accounts, and he saw that the
13   social security numbers for the fraudulent phone accounts
14   matched the social security numbers found in Jones' bedroom.
15   While the names on the fraudulent accounts were fictitious,
16   the social security numbers were confirmed as actual.  Alltel
17   suffered a loss of $41,000 due to this fraud.
18       Your Honor, in 2007-2008, Jones convinced David Chapel,
19   Jerome Coakley and Easin Rivers to open bank accounts and
20   deposit stolen checks therein.  Jones drove his co-defendants
21   to deposit the checks and withdraw the money, much of which
22   was withdrawn via ATM machines.
23       The businesses whose checks were deposited into these
24   accounts had previously reported their mail as having been
25   stolen.  These banks, which include the Wachovia, SunTrust and

1  Bank of America, suffered the loss due to this fraudulent
2  check fraud. All the victim banks were FDIC insured.
3      Jones committed additional bank fraud independent of this
4  conspiracy in count three. He stole identifying information
5  of a man in the military and opened a fraudulent bank account
6  at Bank of America in this man's name. Jones then deposited
7  stolen checks in this account, forged the victim's name on the
8  checks and withdrew the proceeds therefrom.
9      Your Honor, Coakley, Chapel and Rivers were interviewed by
10 postal inspectors, confessed to the bank fraud, and implicated
11 Jones as the leader of the conspiracy.
12     Furthermore, Jones is seen on bank video withdrawing funds
13 from the fraudulent account on numerous occasions. The amount
14 of this loss in this case exceeds $200,000. And the bank
15 fraud occurred in the District of South Carolina.
16          THE COURT: All right, sir. Mr. Jones, you heard
17 what the United States Attorney told me. Is what he said
18 substantially true and correct?
19          MS. WALSH: Judge, I think Mr. DeHart included a lot
20 of information --
21          THE COURT: A lot of stuff he's not involved with. I
22 mean insofar as count three, to which he's pleading.
23          MS. WALSH: Right. He included a lot of information
24 from counts one and two.
25          MR. DeHART: That's correct, Your Honor, I did.

1           MS. WALSH: So we are not agreeing that that
2    information is correct.
3           THE COURT: The main thing I want to know is what he
4    had to say about Jones and these others stealing, either Jones
5    himself or directing others to take these checks from -- mail
6    from the mailboxes, and open up these checking accounts as
7    they did, and he participated in that and he used the money
8    that they got therefrom.
9           MS. WALSH: Judge, Mr. Jones did not tell these three
10   men to steal checks from the mailboxes. And he himself did
11   not steal checks from mailboxes. There was another individual
12   who is not named in this indictment, who stole the checks from
13   the mailboxes and then gave them to Mr. Jones. Mr. Jones does
14   agree that he and these three other people opened bank
15   accounts.
16          THE COURT: First of all, did he know the checks were
17   stolen?
18          MS. WALSH: Yes, he knew the checks were stolen, that
19   these men opened bank accounts, that they deposited the stolen
20   checks in those accounts, that they withdrew money from those
21   accounts, and then they shared the proceeds of the money from
22   those accounts.
23          THE COURT: Now, you heard what your lawyer told me
24   in regard to the count that you're pleading guilty to, count
25   three. Is what she told me substantially true and correct?

```
 1                THE DEFENDANT:  Yes, Your Honor.
 2                THE COURT:  All right, sir.  Mr. United States
 3   Attorney, have you got something else you want to say?
 4                MR. DeHART:  No, Your Honor, I think that's
 5   sufficient.  I think that's sufficient for him to plead guilty
 6   to count three.
 7                THE COURT:  All right, sir.  Ms. Walsh, based on
 8   that, do you know of any reason I shouldn't accept this plea
 9   of guilty?
10                MS. WALSH:  No, Your Honor.
11                THE COURT:  Do you know of any reason, Mr. United
12   States Attorney?
13                MR. DeHART:  No, Your Honor, I believe it's in his
14   best interests.
15                THE COURT:  Let the record show the plea is knowingly
16   and voluntarily made, has a basis in fact, contains all the
17   elements of the crime, is accepted by the Court.
18         All right, Mr. Jones, when the presentence report is
19   prepared and you and Ms. Walsh have had an opportunity to go
20   over it, we've all settled on that, then we'll get you back.
21                THE DEFENDANT:  Thank you Your Honor.
22
23         (Court adjourned at 11:50 a.m.)
24
25
```

1         REPORTER'S CERTIFICATION
2
3         I, Debra L. Potocki, RMR, RDR, CRR, Official Court
4    Reporter for the United States District Court for the District
5    of South Carolina, hereby certify that the foregoing is a true
6    and correct transcript of the stenographically recorded above
7    proceedings.
8
9
10
     S/Debra L. Potocki
11   _____
12   Debra L. Potocki, RMR, RDR, CRR